**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GARNELL THOMPSON,

                                 Plaintiff,

        v.                                                      No. 9:22-CV-0289
(TJM/CFH)

MATTHEW W. RUSHFORD, SUSAN
DEVLIN-VARIN, MARIEJOSE KING,
MARY BERNADETTE SHEEHAN, and
NYS DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, and
JOHN DOE,

                                Defendants.

_____

**APPEARANCES:**                       **OF COUNSEL:**

GARNELL THOMPSON
Plaintiff pro se
06-A-0191
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

HON. LETITIA JAMES            STACEY A. HAMILTON, ESQ.
New York State Attorney General    Asst. Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

                   **REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Garnell Thompson ("Plaintiff"), who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

---

      [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("DOCCS") at Clinton Correctional Facility ("Clinton C.F."), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Matthew W. Rushford ("Rushford"), Susan Devlin-Varin ("Devlin-Varin"), Mariejose King ("King"), Mary Bernadette Sheehan ("Sheehan"), DOCCS, and John Doe ("Doe") for violations of his constitutional rights under the Eighth Amendment as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. See Dkt. No. 1 ("Compl.").

Presently before the Court is Plaintiff's partial motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 32. Defendants opposed the motion and cross moved for summary judgment. See Dkt. No. 36. Plaintiff opposed the cross motion. See Dkt. No. 40. For the following reasons, it is recommended that (1) Plaintiff's motion be denied, and (2) Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Facts[2]

---

[2] In support of the motions, the parties submitted Statements of Material Facts and responses thereto. Dkt. No. 32 at 5-10; Dkt. No. 36-2; Dkt. No. 36-3; and Dkt. No. 40 at 3-9. Local Rule 56.1(a) states:

Summary Judgment Procedure

(a) Statement of Material Facts: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2. For the recommended Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, visit the District's webpage at Notification of Consequences.

The record before the Court contains few undisputed facts. In January 2020, Plaintiff was confined at Clinton C.F. Dkt. No. 36-2 at ¶ 1. On or about January 17, 2020, Nurse Devlin-Varin referred Plaintiff for cataract extraction surgery on his right eye. Dkt. No. 36-4 at ¶ 10; Dkt. No. 36-5. On February 24, 2020, Plaintiff underwent cataract extraction surgery at Retina Consultants, PLLC., and returned to Clinton C.F. the same day. Dkt. No. 32 at ¶ 3; Dkt. No. 36-4 at ¶ 11.

Plaintiff was confined to the Clinton C.F. infirmary until February 26, 2020.[3] Dkt. No. 41 at 76. On February 25, 2020, Plaintiff was scheduled to return to Retina Consultants, PLLC for a post-operative evaluation. Dkt. No. 36-4 at ¶ 12. Plaintiff did not attend the appointment. Dkt. No. 41 at 58-62; Dkt. No. 36-4 at ¶ 12. Upon his discharge from the infirmary, Plaintiff received two letters from Dr. Jonathan Huz, dated February 25, 2020. Dkt. No. 41 at 58-59, 62; Dkt. No. 36-8 at 1; Compl. at 18. The first letter was addressed to

---

(b) Response to Statement of Material Facts: The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established. The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

N.D.N.Y. L.R. 56.1.

In further support of the motion, the parties annexed and referred to exhibits. See Compl. at 18-24; Dkt. No. 36-5 through 36-19; 36-21; 36-22; 36-24; 36-25. To the extent that the parties do not object to the authenticity of any document referenced, the undersigned will consider those documents in the context of the within motions. See United States v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1 n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.")).

[3] The events that transpired in the infirmary are largely disputed.

3

Plaintiff and stated, in pertinent part, "[i]t has come to my attention that [you] did not make it to your post-operative evaluation on February 25, 2020." Dkt. No. 36-8 at 1. The letter also notified Plaintiff of the risks of failing to follow up with post operative care. Id. The second letter was addressed to Clinton County Correctional Infirmary and stated, in pertinent part, "[i]t has come to our attention that Mr. Thompson was unable to make his appointment today for his post-operative follow up care. It is imperative that Mr. Thompson have an evaluation after his retinal surgery on February 24, 2020." Compl. at 18. Dr. Huz also included "[i]nstructions for today," noting that the bandage and dressing should be removed, the eye should be cleaned with sterile saline solution, and the plastic eye shield should be reapplied. Id. Dr. Huz prescribed eye drops to be administered four times per day and noted that the eye shield should be worn "at all times until follow up." Id. Dr. Huz concluded, "[p]lease have patient come to Slingerlands for evaluation this week." Id.

On March 13, 2020, Plaintiff submitted a "Request for Reasonable Accommodations for Inmates with Sensorial Disabilities." Compl. at 22; Dkt. No. 41 at 80. Plaintiff claimed to suffer from a visual impairment and requested large print, orientation & mobility instruction, braille print and equipment, magnifiers, a lamp, and sunglasses or a visor for indoor use. Id. On March 18, 2020, Devlin-Varin completed the medical verification section of the form and indicated, "will need re-evaluation after eye surgery & f/u approx. 5/2020[.]" Id. On March 25, 2020, Deputy Superintendent King issued a determination and noted that the request was "pending medical verification." Dkt. No. 36-22. King indicated, "upcoming eye surgery - will re-evaluate after per medical dept." Id. On March 26, 2020, Plaintiff appealed the determination. Id. On March 31, 2020, after a review, the Superintendent noted that the request "remain[ed] pending" and would be "re-evaluat[ed] after upcoming eye surgery."

Dkt. No. 32-1 at 4.

On April 24, 2020, Plaintiff was transported to the emergency room at Albany Medical Center ("AMC") "due to complications with his right eye."  Compl. at 23-24; Dkt. No. 36-4 at ¶ 16.  Plaintiff was diagnosed with right eye acute angle glaucoma and discharged to Clinton C.F. on April 27, 2020.  Id.

On April 29, 2020, Devlin-Varin completed two "Request and Report of Consultation" forms referring Plaintiff for follow up appointments with AMC Ophthalmology and Retina Consultants, PLLC.  Dkt. No. 36-4 at ¶¶ 17-19; Dkt. Nos. 36-12 and 36-13.

On August 14, 2020, Plaintiff was admitted to AMC for kidney failure.  Dkt. No. 36-23 at ¶ 9; Dkt. No. 41 at 78, 107.  On August 18, 2020, Nurse Sheehan, the individual responsible for arranging the transfer of inmates discharged from AMC, completed a Comprehensive Medical Summary indicating that Plaintiff was "legally blind" in his right eye, but could ambulate without assistance.  Dkt. No. 36-23 at ¶¶ 5, 10; Dkt. No. 36-24 at 5.  On August 31, 2020, Sheehan forwarded an e-mail to DOCCS personnel advising that a "regular transport" could be utilized to transport Plaintiff, with "no precautions" necessary.  Dkt. No. 36-23 at ¶12; Dkt. No. 36-25.  On August 31, 2020, Plaintiff was discharged from AMC and transferred to Elmira Correctional Facility ("Elmira C.F.").  Dkt. No. 36-23 at ¶ 9; Dkt. No. 36-24.

While Plaintiff was confined at Elmira C.F., his request for accommodations was approved.  Dkt. No. 36-4 at ¶ 27; Dkt. No. 41 at 19.  Plaintiff was subsequently transferred to Wende Correctional Facility ("Wende C.F."), where he received accommodations due to his visual impairment.  Dkt. No. 41 at 20.

### B.  Procedural History

In March 2022, Plaintiff commenced the within action.  Dkt. No. 1.  Following review of the complaint, the Court determined that the following claims could survive section 1915 review: (1) Eighth Amendment deliberate medical indifference claims against defendants Doe, Rushford, and Devlin-Varin; (2) Eighth Amendment failure-to-protect claims against defendants Sheehan and Devlin-Varin; and (3) ADA and Rehabilitation Act claims against defendants DOCCS, King, and Devlin-Varin.  Dkt. No. 10.

On August 31, 2022, Devlin-Varin, King, DOCCS, Rushford, and Sheehan filed an answer.[4]  Dkt. No. 26.  On March 15, 2023, Plaintiff was deposed.  Dkt. No. 41.

On April 26, 2023, Plaintiff filed the within motion pursuant to Fed. R. Civ. P. 56 seeking partial summary judgment as a matter of law.  Dkt. No. 32.  Defendants oppose the motion and cross move for summary judgment.  Dkt. No. 36.

### II.  MOTIONS FOR SUMMARY JUDGMENT[5]

Plaintiff moves for judgment as a matter of law, arguing that the evidence establishes that Defendants violated the ADA and RA.  See Dkt. No. 32.  Defendants argue they are entitled to summary judgment on the ADA and RA claims because the individual defendants cannot be liable and Plaintiff cannot establish discriminatory animus or deliberate indifference.  See Dkt. No. 36-2 at 6-7.  Defendants also seek summary judgment and dismissal of Plaintiff's remaining claims, arguing that Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's health and safety.  See id. at 11-

---

[4]  The Doe defendant has not been identified or served.

[5]  All unpublished cases cited herein, unless otherwise indicated, have been provided to plaintiff.

14.  Defendant Rushford also argues summary judgment is warranted because he was not personally involved in any constitutional violation.  Id. at 13.  Defendants alternatively argue that they are entitled to qualified immunity.  Id. at 19.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved, and all reasonable inferences are drawn, in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

7

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (quoting Heublein, Inc. v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, 996 F.2d at 1461.[6]

## A.  ADA and RA

---

[6] Plaintiff argues, without support, that Defendants' Cross Motion should be denied because the documents in support contain the wrong civil case number. See generally Dkt. No. 40. Specifically, Plaintiff notes that the case number is "22-CV-0289" not "22-CV-00289," as included in the caption of Defendants' Declarations. See Dkt. Nos. 36-4, 36-20, 36-23, and 36-27. The Court disagrees with Plaintiff. A typographical error in the heading of an affidavit, with the wrong case number, is not proof of a false statement and does not warrant the entry or denial of a motion for summary judgment. See, e.g., Staszak v. USA, No. 2:19-CV-00052, 2019 WL 7838301, at *1 (E.D. Ark. Oct. 10, 2019), report and recommendation adopted sub nom. Staszak v. United States, 2020 WL 563043 (E.D. Ark. Feb. 4, 2020). Regardless, inclusion of the extra zero before "289" is not considered a "wrong number" as the docket number for this case, as reflected by the docket sheet, is technically 9:22-CV-00289; however, extra zeros that come before the final grouping of numbers in case numbers are sometimes omitted by the Court or practitioners without issue.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A public entity includes "any department, agency . . . or other instrumentality of a State or States or local government[.]"  42 U.S.C. § 12131(1)(B); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).  Title II of the ADA applies to state inmates.  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998); Beckford v. Portuondo, 151 F. Supp.2d 204, 220 (N.D.N.Y. 2001).

### 1.  Claims Against King and Devlin-Varin

Defendants contend that Plaintiff's ADA and RA claims against King and Devlin-Varin must be dismissed because individuals are not proper defendants.  Dkt. No. 36-27 at 11. Generally, under the ADA and RA, a state official may not be sued in their individual capacity.  Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").  Thus, Plaintiff's ADA and RA claims for monetary damages against Devlin-Varin and King in their individual capacities should be dismissed.

In the Second Circuit, it is unsettled whether an individual defendant can be sued in their official capacity to defend against ADA or RA claims.  See Monroe v. Gerbing, 16-CV-2818, 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (collecting cases illustrating the inconsistent holdings as to whether individuals, in their official capacity, can be sued under the ADA or RA); Johnson v. New York State Police, No. 6:22-CV-343, 2023 WL 2320565, at *11 (N.D.N.Y. Mar. 2, 2023).  In limited instances, the Second Circuit has

allowed "an ADA claim for damages against a state (or state agency or official)" to proceed but only "if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." Monroe, 2017 WL 6614625, at *15; Garcia, 280 F.3d at 112. Here, the Court need not resolve this issue because King and Devlin-Varin were acting in their official capacities as representatives of DOCCS, which is also a defendant herein. Thus, the claims against King and Devlin-Varin are redundant of the claims against DOCCS, and thus, should be dismissed. See Scalercio-Isenberg v. Port Auth. of New York, No. 16-CV-8494, 2018 WL 1633767, at *6 (S.D.N.Y. Mar. 31, 2018) (citing Hallett v. New York State Dep't of Corr. Servs., 109 F.Supp. 2d 190, 200 (S.D.N.Y. 2000) ("Because plaintiff is able to assert his ADA and Rehabilitation Act claims against [the state entity] directly, I find that there is no justification for allowing plaintiff to also assert [the same] claims against the individual defendants in their official capacities.")).

## 2. Claims Against DOCCS

Plaintiff claims that DOCCS denied his request for accommodations and, as a result, he was unable to access showers, recreation, the mess hall, the law library and "other programs and services and activities conducted by [DOCCS]." Compl. at 10, 15. Plaintiff argues that "[d]efendants did not dispute his contention, during the grievance process, that he was visually impaired and entitled to reasonable accommodations." Dkt. No. 32 at 1. Defendants argue that Plaintiff's request was not denied. See Dkt. No. 36-27 at 15. Defendants also contend that the record does not support Plaintiff's claim that he was denied access to services. Finally, Defendants contend that Plaintiff has failed to establish that DOCCS acted with discriminatory animus, ill will, or deliberate indifference. See Dkt. No. 36-27 at 12-14.; Dkt. No. 36-4 at ¶24.

10

To establish a prima facie violation under the ADA and RA, an inmate must demonstrate that:

> "(1) that he is a 'qualified individual' with a disability; (2) that the defendants are subject to the ADA and/or Rehabilitation Act[7]; and (3) that the plaintiff was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y].' "

Andino v. Fischer, 698 F.Supp. 2d 362, 378 (S.D.N.Y. 2010) (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)); Clarkson v. Coughlin, 898 F.Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.  Similarly, the RA applies to any "qualified individual with a disability" and protects that individual from being "excluded from the participation in, . . . [or] denied the benefits of," any federally-funded program "solely by reason of his or her disability . . . ."  29 U.S.C. § 794(a); see also Clarkson, 898 F.Supp. at 1037–38 ("The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act").  As Plaintiff's claims under both the ADA and the RA arise out of the same facts and circumstances, the Court will address them together.

### a. First Element: Qualified Individual

A person is an individual with a qualified disability if "(A) a physical or mental impairment . . . substantially limits one or more of the major life activities of such individual, (B) [there is] a record of such an impairment, or (C) [the individual is] being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)–(C).

> To determine if an individual meets any of the above criteria, courts apply a three part test . . . First, a plaintiff must show that

---

[7]  "The fact that DOCCS 'accepts federal funding is subject to judicial notice.'" Thompson v. New York State Corr. & Cmty. Supervision, No. 22-CV-6307, 2022 WL 4562318, at *10 (W.D.N.Y. Sept. 29, 2022).

> [he or] she suffers from a physical or mental impairment.
> Second, the plaintiff must establish that the activity [he or] she
> alleges to be impaired constitutes a "major life activity." Third,
> the plaintiff must show that [his or] her impairment "substantially
> limits" the major life activity previously identified.

Smith v. Masterson, 538 F.Supp 2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted).

A major life activity is defined as "seeing, . . . walking, standing, . . . reaching, lifting,

bending, . . . interacting with others, . . . ." 29 C.F.R. § 1630.2(i)(1). In determining whether

a major life activity is "substantially limited," the Court must analyze: "(1) the nature and

severity of the impairment; (2) the duration or expected duration of the impairment; (3) the

permanent or long-term impact, or expected long-term impact of or resulting from the

impairment." Baerga v. Hosp. for Special Surgery, No. 97 Civ. 0230, 2003 WL 22251294,

at *5 (S.D.N.Y. Sept. 30, 2003).

    Plaintiff qualifies as an individual with disabilities. Plaintiff suffers from visual

impairments that substantially limited his ability to access the showers, law library, mess

hall and recreation at Clinton C.F. Id. at 116-128. There is an extensive record of his

impairment and evidence that his medical providers viewed Plaintiff as having a visual

impairment. From March 2020 until August 2020, Devlin-Varin scheduled Plaintiff for

several appointments with outside specialists to address Plaintiff's visual impairments. See

generally Dkt. No. 36-24. Further, Sheehan opined that Plaintiff was "legally blind" in the

right eye. Dkt. No. 36-24 at 5. Moreover, Plaintiff's request for accommodations was

eventually granted and he was transferred to a facility to "accommodate individuals with

failing vision." See Dkt. No. 36-4 at ¶ 24; Dkt. No. 41 at 20. Accordingly, the Court will

address whether Plaintiff was denied the opportunity to participate in services, programs or

activities. See Colon v. New York State Dep't of Corr. & Cmty. Supervision, No. 15 CIV.

7432, 2017 WL 4157372, at *7 (S.D.N.Y. Sept. 15, 2017) (reasoning that the plaintiff, a legally blind inmate, was a qualified individual).

### b. Third Element: Participation in Programs and Services

The third prong of the ADA and RA analysis requires the undersigned to assess whether plaintiff was "excluded from participation in or [ ] denied the benefits of some service, program, or activity by reason of his [ ] disability." Clarkson, 898 F.Supp. at 1037. In assessing whether a public entity failed to provide a qualified individual with reasonable accommodations, the Court must "ask whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

"In addition to the outright denial of a reasonable accommodation, [a] delay in providing a reasonable accommodation can violate the ADA, if that delay is caused by discriminatory animus and is sufficiently lengthy to constitute a constructive denial of a reasonable accommodation." Franks v. Eckert, No. 18-CV-589, 2020 WL 4194137, at *4 (W.D.N.Y. July 21, 2020) (internal quotation marks omitted) (citing Wenc v. New London Bd. of Educ., No. 3:14-CV-0840, 2016 WL 4410061, at *12 (D. Conn. Aug. 16, 2016), aff'd, 702 F. App'x 27 (2d Cir. 2017)). "[A]n unreasonable delay itself might be evidence of discriminatory intent"; however, courts should also consider "whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons." Logan v. Matveevskii, 57 F.Supp.3d 234, 271 (S.D.N.Y. 2014).

13

Defendants argue that Plaintiff does not offer any "documentary support" for his "conclusory" claim that he was denied access to showers, recreation, mess hall, law library and other services "due to not being able to see properly and/or walk properly."  Dkt. No. 36-27 at 14.  Defendants further contend that the record lacks evidence of discriminatory intent.  Id.  Plaintiff argues he was constructively denied access to services including showers, recreation, the mess hall and law library because DOCCS denied his request for reasonable accommodations. Plaintiff and Defendants have failed to show the absence of a genuine issue of fact with regard to this issue.

During his deposition, Plaintiff testified that he was unable to shower or attend recreation due to his disability and the lack of accommodations.  Plaintiff explained that he could not take a shower or participate in recreation because he could not see and testified, "I'm not suicidal. It's the most notorious prison in New York."   Dkt. No. 41 at 116-117. Plaintiff also testified that he was unable to access the law library because he could not see the request slip to "fill it out" and that he was unable to eat in the mess hall because he could not see to navigate the hallway and steps. Id. at 119, 121.

Even assuming Plaintiff was denied access to services, Defendants contend that the record lacks evidence of discriminatory intent or ill will.  Devlin-Varin and King claim that they deferred a decision on Plaintiff's request pending an optometry evaluation that was scheduled to take place within two months.  See Dkt. No. 36-4 at ¶ 15.  Moreover, in Devlin-Varin's own words, she continuously and repeatedly scheduled Plaintiff for appointments related to his vision impairments, transported him to outside hospitals, and prescribed "copious medications for treatment and pain."  See Dkt. No. 36-27 at 15-16.  However, Defendants concede that the "optometry appointment required for Defendants to determine

Plaintiff's reasonable accommodation request did not occur until August 2020" and do not offer any explanation for the three-month delay. See Dkt. No. 32-27 at 16. Moreover, while it is undisputed that, between March 2020 and August 2020, Devlin-Varin scheduled appointments with Clinton C.F.'s optometrist, AMC, Glaucoma Consultants, and New Lion Eye Clinic (see Dkt. No. 36-4 at ¶¶ 18-20, 22-23; Dkt. No. 36-12; Dkt. No. 36-13; Dkt. No. 36-14; Dkt. No. 36-15; Dkt. No. 36-16; Dkt. No. 36-17), Defendants do not address or explain why Plaintiff's requests for accommodations were not addressed or re-visited during that time. Further, although Defendants contend that Plaintiff was not compliant with his medical appointments and surgery – a detail Plaintiff disputes – Defendants also claim that the COVID-19 pandemic created delays and issues with appointments. See Dkt. No. 36-4 at ¶¶ 25, 28; Dkt. No. 36-20 at ¶ 14. Finally, it is undisputed that Plaintiff's request for accommodations was granted after he was transferred out of Clinton C.F. While housed at Wende C.F., he received a talking book player, reasonable accommodation permit, magnifier, lamp, talking calculator, guidance cane, and sunglasses. See Thompson v. DOCCS, et al., No. 6:22-CV-6307, Dkt. No. 1-1 at 2 (W.D.N.Y. Mar. 24, 2022).

Based on the facts herein, a reasonable factfinder must resolve the issue of whether the delay in providing Plaintiff with reasonable accommodations was "sufficiently lengthy to constitute constructive denial." Franks, 2020 WL 4194137, at *4 (citing inter alia Logan, 57 F.Supp.3d at 271) ("[C]ourts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months.")); O'Toole v. Ulster Cnty., No. 1:12-CV-1228 (LEK/RFT), 2014 WL 4900776, at *8 (N.D.N.Y. Sept. 30, 2014) (reasoning that a rational factfinder could conclude that the six-month delay establishes a failure to reasonably accommodate a plaintiff's disability).

15

Accordingly, it is recommended that Plaintiff's motion for partial summary judgment and Defendants' cross motion for summary judgment, on this ground, be denied.  See Lewis v. Boehringer Ingelheim Pharms., Inc., 79 F.Supp. 3d 394, 411 (D. Conn. 2015) (finding a genuine issue of material fact regarding whether an eight- or nine-month delay in providing the plaintiff with a reasonable accommodation was justified by the defendant's safety concerns); see also Rosales v. LaValley, No. 11-CV-106 (MAD/CFH), 2012 WL 7688115, at *13 (N.D.N.Y. Nov. 2, 2012) (reasoning that there was a question of material fact as to whether DOCCS failed to provide reasonable accommodations to assure that the plaintiff could hear within the prison setting and access meals, recreation, showers, and medication, precluding summary judgment on ADA and RA claims), report and recommendation adopted in part, rejected in part, 2013 WL 992547 (N.D.N.Y. Mar. 13, 2013).

**B.  Eighth Amendment Claims**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  "If the defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct."  Coleman v. Racette, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *5 (N.D.N.Y. May 27, 2021) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981)), report and recommendation adopted, 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021).  Instead, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  Tangreti v. Bachman, 983

16

F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).  "The

violation must be established against the supervisory official directly."  Id.  Thus, in this

case, to avoid summary judgment, Plaintiff must establish that each defendant violated the

Eighth Amendment by his or her "own conduct, not by reason of [his or her] supervision of

others who committed the violation" and may not "rely on a separate test of liability specific

to supervisors."  Id. at 619 (citations omitted).

### 1. Deliberate Medical Indifference

Plaintiff contends that Devlin-Varin and Rushford were deliberately indifferent to his

serious medical needs in violation of the Eighth Amendment because Defendants failed to

adhere to post-operative instructions.  See generally Compl.  Defendants dispute that

contention and argue that Plaintiff received adequate medical care in the infirmary and

refused to attend his February 25, 2020, appointment with Retina Consultants, PLLC.  Dkt.

No. 36-27 at 19.

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on

those convicted of crimes, "which includes punishments that involve the unnecessary and

wanton infliction of pain."  U.S. CONST. AMEND. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66

(2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  "In order to establish an

Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove

'deliberate indifference to [his] serious medical needs.'"  Chance v. Armstrong, 143 F.3d

698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  An Eighth

Amendment claim for medical indifference, has two necessary components, one objective

and the other subjective.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  The

objective component requires the plaintiff to demonstrate that his alleged medical need is

"sufficiently serious." Hathaway, 37 F.3d at 66. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

For an inmate to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Deprivation of medical treatment is "sufficiently serious" if the injury or illness is one where there is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (internal citation omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). First, the Court must determine "whether the prisoner was actually deprived of adequate medical care." Kucharczyk v. Westchester Cnty., 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). "Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is reasonable." Jones v. Westchester Cnty. Dep't of Corrs., 557 F.Supp.2d 408, 413 (S.D.N.Y. 2008). However, a prison official may be held liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280.

> [I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.

> Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Id. (internal citation and quotation marks omitted).

As to the subjective component, a prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280 (quotation marks omitted). A defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.'" Wright v. Genovese, 694 F.Supp.2d 137, 154 (N.D.N.Y. 2010) (citing Farmer, 511 U.S. at 844). Therefore, "the defendant's belief that his conduct posed no risk of serious harm need not be sound so long as it is sincere, and even if objectively unreasonable, a defendant's mental state may be nonculpable." Id. at 154-55 (quoting

Salahuddin, 467 F.3d at 281) (internal quotation marks omitted).

Plaintiff contends that Defendants did not adhere to Dr. Huz's post-operative instructions while he was in the infirmary in February 2020. Dkt. No. 41 at 35. Plaintiff testified that infirmary personnel did not clean his eye, remove his eye patch, replace the dressing, or dispense eye drops. Id. at 76-77. Plaintiff also argues that Defendants were deliberately indifferent to his serious medical needs because they did not transport him to Retina Consultants, PLLC on February 25, 2020, for a post-operative appointment. Compl. at 7-8.

### a. Rushford

In support of summary judgment, Rushford, the Registered Nurse Supervisor 1 at Clinton C.F., provided a Declaration in which he avers that he did not provide any direct health care to Plaintiff. Dkt. No. 36-26 at ¶ 9. Plaintiff does not refute this claim and testified he had no personal contact with Rushford, see Dkt. No. 41 at 27, but alleges that e-mails between Rushford, Devlin-Varin, and Sheehan establish that Rushford was personally involved in Plaintiff's "medical treatment plan and outside hospital trips that were planned for [him] to get [him] treated for both of -- my left eye and my right eye." Id. at 25. Plaintiff asserts that Rushford failed to "ensure" that "the medical staff made the correct appointments for me and ensure[] that I was taken to those appointments by the Department of Corrections." Id. at 27. However, Plaintiff has not produced the e-mails or any other evidence suggesting that Rushford was personally involved with Plaintiff's post-operative care in the infirmary in February 2020. Without such evidence, Plaintiff has not met his burden of presenting evidence to support his claim that Rushford acted with culpable intent with respect to Plaintiff's post-operative care. See Murrell v. Sheron, No.

20

21-CV-6576, 2023 WL 1970487, at *7 (W.D.N.Y. Feb. 13, 2023) (citing <u>Tangreti</u> and

dismissing Eighth Amendment claim based on the failure to supervise medical staff); <u>see</u>

<u>also</u> <u>Cossette v. Edwards</u>, No. 20-CV-6427, 2022 WL 2342478, at *10 (S.D.N.Y. June 29,

2022) (dismissing claims against doctor who "supervised those who failed to provide

adequate medical care" for failure to plead that he was personally involved in medical care).

On this ground, it is recommended that Defendants' motion be granted.

### b. Devlin-Varin

At the relevant time, Devlin-Varin was responsible for providing primary care for male

incarcerated individuals, including conducting assessments, diagnosing, prescribing

medication, referring to specialists, and following up based on health care needs.  Dkt. No.

36-4 at ¶ 7.  Devlin-Varin does not dispute that she was present in the infirmary in February

2020, and avers, "Clinton medical personnel ensured that the Plaintiff's dressing from the

surgery was in place, that the eye patch remained in place, and administered medication to

the Plaintiff."[8]  Dkt. No. 36-4 at ¶ 12; Dkt. No. 36-6.  In support of the motion, Defendants

provided copies of the Infirmary Progress Notes and a copy of a form entitled Refusal of

Medical Examination and/or Treatment.  Dkt. Nos. 36-6 and 36-7.  The Progress Notes

indicate that Plaintiff was repeatedly examined, his blood pressure was monitored by the

staff and provider, and medication was administered to control his blood pressure.  <u>See</u>

<u>generally</u> Dkt. No. 36-6.  According to the notations, Plaintiff's eye patch was removed, the

---

[8]  During his deposition, Plaintiff testified he "had no idea" whether Devlin-Varin was present in the infirmary from February 23, 2020, until February 25, 2020.  Dkt. No. 41 at 36.  However, Devlin-Varin does not suggest or argue that she was not personally involved in Plaintiff's treatment.  Moreover, in the Memorandum of Law in support of Defendants' motion, counsel concedes, "[t]he Devlin-Varin Declaration demonstrates that she, and other Clinton C.F. medical personnel, monitored the Plaintiff's medical condition, provided ongoing treatment for the Plaintiff, and regularly, repeatedly, and continuously scheduled the Plaintiff for the necessary appointments related to his medical condition."  Dkt. No. 36-27 at 19.

dressing was changed, the eye shield was replaced, and eye drops were administered.  Id. The Refusal of Medical Examination and/or Treatment is dated February 25, 2020, at 2:00 A.M. and indicates that Plaintiff "refused because [the] appointment [is] for 3 pm trip, [includes a] 7 hr[] drive, I'd be in holding cell for hours, too much stress."  Dkt. No. 36-7.

Plaintiff provides a different version of events.  Plaintiff testified that the Infirmary Progress Notes are "false records" and that the person who prepared the records was "lying."  Dkt. No. 41 at 76-78.  Plaintiff testified that medical staff "never removed" his eye patch, "never cleaned" his eye, and did not administer eye drops.  Id.  Rather, upon discharge, the eye drops were handed to him in a white paper bag.  Id.  Plaintiff presents similar challenges to the Refusal Form and testified, "I have no recollection of making - - writing that statement or signing that form."  Id. at 60.  Plaintiff explained, "I would have to be a psychic to know that the appointment was at three p.m. because the Department of Correction does not let prisoners know when outside trips are scheduled.  It's a breach to security."  Dkt. No. 41 at 60.  Devlin-Varin does not affirm having prepared the Infirmary Progress Records, and Defendants did not provide an affidavit from the medical provider(s) who prepared the Progress Records to authenticate the document.  Similarly, the Medical Refusal form includes the signature of a witness; however, that witness did not provide a declaration or affidavit in support of the motion, and Devlin-Varin does not attest to having witnessed Plaintiff sign the document.

Here, the competing evidence rests on the credibility of Plaintiff on one hand and Devlin-Varin on the other.  In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party leaves no choice but to credit Plaintiff's version of the events for purposes of this motion.  See In re Dana Corp.,

22

574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to the trier of fact) (citing cases). As Defendants fail to show the absence of a genuine issue of material fact on the issue whether Devlin-Varin was deliberately indifferent to Plaintiff's serious medical needs, the undersigned recommends that this portion of Defendants' motion be denied.

### 2. Failure to Protect

Plaintiff alleges that Sheehan "ignored Plaintiff's medical providers orders," and, as a result, he suffered "pain after being handcuffed, leg shackled for more than six hours straight" during transports to AMC, Retina Consultants, PLLC., and New Lion Eye Clinic. Compl. at 10-11. Plaintiff further claims that he reported to Devlin-Varin that he suffered injuries to his wrists and ankles from the restraints and that the officers who transported him "would pick him up and toss him into [a] van that was not designed to accommodate inmates with sensorial disabilities causing him to fall onto seat or metal floor of van." Id. at 11. Defendants argue that Plaintiff has failed to establish that they failed to protect him from conditions posing a substantial risk of serious harm. Dkt. No. 36-27 at 24.

To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) objectively, he was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) subjectively, officials acted with deliberate indifference to that risk and the inmate's safety. Farmer, 511 U.S. at 834. As to the objective prong, the deprivation must be "sufficiently serious," Hathaway, 37 F.3d at 66 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted)), and "contemplate[ ] 'a

23

condition of urgency, one that may produce death, degeneration, or extreme pain.'" Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting)).

As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. See Farmer, 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." Murray v. Goord, 668 F.Supp. 2d 344, 359 (N.D.N.Y. 2009).

In this case, Plaintiff must show that the alleged condition -- being transported in a "regular van" while handcuffed and shackled -- was sufficiently serious to impose an unreasonable risk to plaintiff's health. See Harris v. City of New York, No. 15-CV-6341, 2018 WL 1997974, at *4 (E.D.N.Y. Apr. 27, 2018); see also Cuffee v. City of New York, No. 15CV8916, 2017 WL 1232737, at *7 (S.D.N.Y. Mar. 3, 2017) ("[A]n in-custody plaintiff injured during transport may . . . state a deliberate-indifference claim if he or she alleges facts in addition to the absence of seatbelts and reckless driving, that, taken as a whole, suggest that the plaintiff was exposed to conditions posing an unreasonable risk of serious harm, and that the defendants were aware of those conditions.")

Following review, the undersigned finds that Plaintiff has failed to raise a triable issue of fact with respect to his failure-to-protect claims. Initially, the undersigned notes that the record does not contain evidence to satisfy the objective prong of this Eighth Amendment claim. In the complaint, Plaintiff makes general claims regarding "transports" to AMC, Retina Consultants and New Lion Eye Clinic. However, Plaintiff does not specify which

transports, if any, involved conditions posing a substantial risk of serious harm. The record lacks dates, times, locations, or the identify of any officers or individuals involved in the transports. Moreover, Plaintiff's vague claims related to "swollen and numb" wrists and ankles from restraints that were "so tight," are not supported by evidence related to when, where, or how Plaintiff sustained the alleged injuries. As presently constituted, there is no record evidence to support Plaintiff's contention that he sustained any injuries during any transport.

Even assuming Plaintiff was subjected to temporary or unnecessary discomfort associated with transport, "without medical evidence demonstrating that this caused [. . .] further injury," the Court cannot conclude that Defendants' inaction or action resulted in a constitutional violation. See, e.g., Burgess v. Pliler, No. CIVS030643, 2007 WL 430742, at *10 (E.D. Cal. Feb. 6, 2007) (holding that the defendant's inaction amounted, at most, to negligence which does not constitute an Eighth Amendment violation) (citation omitted), report and recommendation adopted, 2007 WL 776585 (E.D. Cal. Mar. 12, 2007), aff'd sub nom Burgess v. Johnson, 314 F. App'x 33 (9th Cir. 2008) (summary order); see also generally Shain v. Grayson Cnty., Ky., 4:11-CV-P84-M, 2011 WL 5122667, at *4-5 (W.D. KY Oct. 28, 2011) (finding that, where the inmate plaintiff's alleged "only that his hands were red and swollen from the handcuffs and black box restraint and that he suffered discomfort" during transport, and did not contend that he sought or received medical attention during or following the transport, his complaints of injury were de minimis and did not rise to the level of an Eighth Amendment violation).

Second, the record lacks facts to satisfy the subjective element of this Eighth Amendment claim. In support of summary judgment, Sheehan provided a Declaration and

conceded that she was involved in decisions related to Plaintiff's transportation from AMC in August 2020.  Dkt. No. 36-23 at ¶¶ 5, 8, 10.  Sheehan assessed Plaintiff's condition and concluded that a "regular van" could be utilized to transport him from AMC to Elmira C.F. Id. at ¶ 12.  Plaintiff testified that he had no personal interaction with Sheehan.  Dkt. No. 41 at 31.  Consequently, without more, the record lacks evidence suggesting that Sheehan exhibited any deliberate indifference.  See Jones v. Lott, No. CV 17-0513, 2018 WL 1998333, at *3 (S.D. Ala. Apr. 5, 2018) (holding that the defendant, who took action to "get [the] [p]laintiff to where there was an infirmary, so he could be treated[,]" cannot be said to have exhibited deliberate indifference), report and recommendation adopted, 2018 WL 1997759 (S.D. Ala. Apr. 27, 2018).

Similarly, with respect to Devlin-Varin, the record lacks evidence connecting Devlin-Varin to any decisions related to how or when Plaintiff was transported to/from medical appointments.  To the extent that Plaintiff alleges that Devlin-Varin aware that he sustained injuries during transport, those claims are wholly conclusory.  The record lacks any evidence establish when or how Plaintiff "notified" Devlin-Varin that he was injured.

As the record lacks evidence demonstrating that Plaintiff was exposed to conditions posing an unreasonable risk of harm, or that Defendants were personally involved or even aware of the conditions, it cannot be said that Defendants acted with deliberate indifference. Accordingly, it is recommended that Defendants' motion be granted on this ground.

### C.  Qualified Immunity

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v.

Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges

"are so clearly defined that a reasonable public official would know that his actions might

violate those rights, qualified . . . immunity might still be available . . . if it was objectively

reasonable for the public official to believe that his acts did not violate those rights."

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d

364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if

the plaintiff's allegations are accepted as true, there would be a constitutional violation.  See

Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a

court proceed to determine whether the constitutional rights were clearly established at the

time of the alleged violation.  Aiken v. Nixon, 236 F.Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, Defendants' argument in support of the qualified immunity defense is one

paragraph long, entirely conclusory, and unsupported by any facts.  See Dkt. No. 36-27 at

25.  As to the first prong of the qualified immunity analysis, the Court finds that Thompson

has presented genuine issues of material fact as to his ADA/RA claims and Eighth

Amendment claim that Devlin-Varin was deliberately indifferent to his medical needs.

Addressing the second prong, it is well established that, at the time Thompson was

treated, "[a] claim of deliberate indifference to serious medical needs in violation of the

Eighth Amendment alleges the violation of a clearly established right." Burton v. Lynch, 664

F.Supp.2d 349, 368 (S.D.N.Y. 2009) (citing Lloyd v. Lee, 570 F.Supp.2d 556, 570 (S.D.N.Y.

2008)).  Additionally, during the relevant time period, it was established that the ADA and

the RA were applicable to inmates in state prisons. Penn. Dep't of Corr., 524 U.S. 206, 213

(1998); Clarkson, 898 F.Supp. at 1034.  Thus, accepting all of Plaintiff's allegations as true

at this stage, qualified immunity cannot be granted to Defendants for the alleged Eighth Amendment violations or for the ADA and RA claims. Accordingly, it is recommended that Defendants' motion on this ground be denied.

## III.  FAILURE TO IDENTIFY AND SERVE DOE DEFENDANT

It is well settled that a plaintiff's pro se status "does not exempt a [plaintiff] from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).  Under the Federal Rules of Civil Procedure, if a defendant has not been served within 120 days after the complaint is filed, the Court must dismiss the action without prejudice against the unserved defendants or order that service on those defendants be made within a specified time.  FED. R. CIV. P. 4(m).  However, where the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  See id.; N.D.N.Y. L.R. 4.1(b) ("requir[ing] . . . service of process upon all defendants within sixty (60) days of the filing of the complaint.").

When deciding whether to extend a plaintiff's time for serving defendants, "a district court is afforded ample discretion to weigh the 'overlapping considerations' involved in determining whether good cause exists, and whether an extension may be granted in its absence." Shepherd v. Fischer, No. 9:10-CV-01524 (TJM/DEP), 2015 WL 1246049, at *21 (N.D.N.Y. Feb. 23, 2015) (citing Zapata v. New York, 502 F.3d 192, 197 (2d Cir. 2007)). Some circuits require district courts to apply a two-step analysis to determine whether good cause exists for an extension to be granted.  See Zapata, 502 F.3d at 197.  However, the Second Circuit has determined that, "whether such a bifurcated inquiry would be useful is a

question best left to the district court[.]"  Id.

Based on a thorough review of the present record, the undersigned concludes that

there is no good cause for Plaintiff's failure to identify and serve the Doe defendant.

Plaintiff filed his complaint in March 2022.  See Compl. at 16.  In a Decision and Order filed

on June 14, 2022, the Court warned Plaintiff that he

> must take reasonable steps to ascertain through discovery the identity
> of [the Doe defendants].  Upon learning the identity of the unnamed
> defendant, plaintiff must amend the operative complaint to properly
> name that individual as a party.  If plaintiff fails to ascertain the identity
> of the John Doe defendant so as to permit timely service of process,
> all claims against him will be dismissed.

Dkt. No. 10 at 10.  The Court also informed Plaintiff that, "Rule 4 of the Federal Rules of

Civil Procedure require[s] that a party be served within 90 days of issuance of the

summons, absent a court order extending that period.  FED. R. CIV. P. 4(m).  The Court's

local rules shorten the time for service from 90 days under Rule 4(m) to 60 days.  N.D.N.Y.

L.R. 4.1(b)."  Id. at 10 n.4.

Plaintiff did not identify the Doe defendant and the Doe defendant has not been served.

Nearly eighteen months have passed since the Court's warning in its June 2022 Decision

and Order that Plaintiff was required to identify and serve the Doe defendant named in his

complaint -- far beyond the usual 120 days to identify and serve a defendant.  See FED. R.

CIV. P. 4(m).  During this period, the discovery deadline was reset, and, therefore, Plaintiff

has received ample opportunity to identify and serve the Doe defendant.  See Text Orders,

dated Feb. 23, 2020.  Plaintiff's failure to do so, therefore, has not been the result of lack of

opportunity.

Because the Doe defendant has not been served or otherwise appeared in the action in

the appropriate 120-day time period, and because there is no good cause to justify Plaintiff's failure to identify the defendant, it is recommended that Plaintiff's claims, insofar as asserted against the Doe defendant, be dismissed.  See Taft v. Fricke, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *1 (N.D.N.Y. July 26, 2019), report and recommendation adopted, 2019 WL 4744225 (N.D.N.Y. Sept. 30, 2019); Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F.Supp. 1279, 1282 (S.D.N.Y. 1989).

### IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that Plaintiff's motion for partial summary judgment (Dkt. No. 32) be **DENIED IN ITS ENTIRETY**; and it is further

**RECOMMENDED**, that Defendants' cross motion for summary judgment (Dkt. No. 36), be **GRANTED in part**, insofar as the following claims be dismissed: (1) Plaintiff's ADA and RA claims against King and Devlin-Varin; (2) Plaintiff's Eighth Amendment claims against Rushford; and (3) Plaintiff's Eighth Amendment failure-to-protect claims; and it is further

**RECOMMENDED**, that Defendants' cross motion (Dkt. No. 36) be **DENIED in all other respects**; and it is

**RECOMMENDED**, that the Doe defendant be sua sponte **DISMISSED** from this action without prejudice, due to Plaintiff's failure to identify and/or serve the defendant; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[9]

Dated: December 15, 2023
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).