UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARNELL THOMPSON,

                                              **Plaintiff,**

                    v.                                                9:22-CV-289
                                                                 (FJS/CFH)

**NEW YORK STATE CORRECTIONS AND
COMMUNITY SUPERVISION;**[1] **JOHN DOE,** Director
of Clinton Correctional Facility Health Services;
**MATHEW RUSHFORD,** Nurse Administrator, Clinton
Correctional Facility; **SUSAN DEVLIN-VARIN,**
Nurse Practitioner, Clinton Correctional Facility;
**MARIEJOSE KING,** Deputy Superintendent of
Programs, Clinton Correctional Facility; and
**MARY BERNADETTE SHEEHAN,** Registered Nurse,
Senior Utilization Review Nurse,

                                              **Defendants.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**GARNELL THOMPSON**
**06-A-0191**
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                 **STACEY A. HAMILTON, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

---

[1] The correct name of this Defendant is "New York State Department of Corrections and Community Supervision."

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Garnell Thompson ("Plaintiff"), who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F."), brings this action *pro se* pursuant to 42 U.S.C. § 1983 against Defendants Matthew W. Rushford ("Rushford"), Susan Devlin-Varin ("Devlin-Varin"), Mariejose King ("King"), Mary Bernadette Sheehan ("Sheehan"), DOCCS, and John Doe ("Doe"). *See* Dkt. No. 1 ("Compl."). Plaintiff asserts that Defendants violated his rights under the Eighth Amendment, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. *See id.*

The case was referred to Magistrate Judge Christian F. Hummel for report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). After initial review pursuant to 28 U.S.C. § 1915, remaining were Plaintiff's (1) Eighth Amendment medical indifference claims against Defendants Doe, Rushford, and Devlin-Varin; (2) Eighth Amendment failure-to-protect claims against Defendants Sheehan and Devlin-Varin; and (3) ADA and RA claims against Defendants DOCCS, King, and Devlin-Varin. *See* Dkt. No. 10.

Magistrate Judge Hummel addressed Plaintiff's partial motion for summary judgment, *see* Dkt. No. 32, and Defendants' cross-motion for summary judgment, *see* Dkt. No. 36. *See generally* Dkt. No. 42, Dec. 15, 2023 Report-Recommendation and Order ("Rep. Rec."). After review, Judge Hummel recommended that the Court

(1) deny Plaintiff's motion for partial summary judgment in its entirety;

(2) grant in part Defendants' cross-motion for summary judgment and dismiss (a) Plaintiff's ADA and RA claims against Defendants King and Devlin-Varin, (b) Plaintiff's

> Eighth Amendment claims against Defendant Rushford, and (c) Plaintiff's Eighth Amendment failure-to-protect claims and (d) deny the motion in all other respects; and
>
> (3) *sua sponte* dismiss the Doe defendant from this action without prejudice due to Plaintiff's failure to identify and/or serve that defendant.

*See id.* at 30.

Plaintiff filed objections to some of Judge Hummel's recommendations, *see* Dkt. No. 43 ("Objections" or "Obj."), and separately filed copies of emails referenced in the Objections, which Plaintiff identified as "documentary evidence" in support of the Objections. *See* Dkt. No. 44. Defendants filed no objections, and their time to do so has expired.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir.1997) (stating that, if an objection is filed, "'the court shall make a de novo determination of those portions of the report . . . to which objection is made'" (quoting [28 U.S.C. § 636(b)])); *Booth v. City of Watertown*, No. 5:22-cv-1011 (BKS/ML), 2023 WL 7647777, *1 (N.D.N.Y. Nov. 15, 2023) (stating that "[t]his Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection" (citing *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C))). "'A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion.'" *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (quotation omitted); *see also Booth*,

2023 WL 7647777, at *1 (stating that "[p]roperly raised objections must be 'specific and clearly aimed at particular findings' in the report" (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))).

"'[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . .'" *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, * 2 (S.D.N.Y., Aug. 25, 2011) (quotation omitted); *see also Booth*, 2023 WL 7647777, at *1 (same); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp.2d 333, 340 (S.D.N.Y. 2009) (same).  The Court reviews general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge for clear error.  *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n.2 (N.D.N.Y. 2008).  Likewise, "[t]o the extent a party makes 'merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments' in the original submission, the Court will only review for clear error."  *Ellis v. Requires*, No. 9:17-cv-0577 (BKS/DJS), 2020 WL 6606327, *1 (N.D.N.Y. Nov. 12, 2020) (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)); *see id.* at *4 (stating that "[t]he Court applies clear error review to objections that are 'simply an attempt to rehash the same arguments that the magistrate considered and found deficient'" (quoting *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 527 (E.D.N.Y. 2012))). "Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error."  *Ellis,* 2020 WL 6606327, at *1 (citing [*Machicote*, 2011 WL 3809920, at *2]).

After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge

may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Plaintiff objects to the extent Magistrate Judge Hummel recommends the dismissal of his ADA and RA claims against Defendants King and Devlin-Varin, his Eighth Amendment medical indifference claim against Defendant Rushford, and his Eighth Amendment failure-to-protect claim against Defendant Devlin-Varin. *See generally* Objections  The Court addresses these objections in turn.

A.    **ADA and RA claims against Defendants King and Devlin-Varin**

Plaintiff contends that the Court should not dismiss his ADA and RA claims against Defendants King and Devlin-Varin because, based on July 7, 2020 e-mails between Defendant King and Devlin-Varin submitted with his Objections, these Defendants "were personally involved with Plaintiff's request for accommodation[s] making them liable for the constructive denial of said accommodations." *See* Obj. at 1.[2] The Court overrules this objection.

"Courts 'generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation.'" *Ellis*, 2020 WL 6606327, at *3 (quoting *Fischer v. Forrest*, 286 F.Supp.3d 590, 603 (S.D.N.Y. [2018]) (citation omitted)).  "'The submission of new evidence following such a report is merited only in rare cases, where the party objecting to a Report has offered "a most compelling reason" for the late production of such evidence, or a

---

[2] References to the page numbers of documents in the record are to the page numbers that the Court's CM/ECF System generates and are located in the upper right-hand corner of those pages.

"compelling justification for [its] failure to present such evidence to the magistrate judge."'" *Id.* (quoting [*Fischer*, 286 F. Supp. 3d at 603] (citations omitted)); (citing *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (noting that while the district court has "discretion to consider evidence that had not been submitted to the Magistrate Judge," "[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration")).

Plaintiff has not presented, and the Court does not find, any compelling reason to consider the new evidence he submitted with the Objections. Indeed, in addressing Plaintiff's Eighth Amendment claims against Defendant Rushford, Magistrate Judge Hummel noted that in opposition to Defendants' motion Plaintiff alleged that "e-mails between Rushford, Devlin-Varin, and Sheehan establish that Rushford was personally involved in Plaintiff's" post-operative care, but that "Plaintiff ha[d] not produced the e-mails or any other evidence suggesting that Rushford was personally involved with Plaintiff's post-operative care in the infirmary in February 2020." *See* Rep. Rec. at 20. Thus, it appears Plaintiff had possession of some or all of the e-mails upon which he now relies. Plaintiff fails to articulate a compelling reason or justification for his failure to present this e-mail evidence to Magistrate Judge Hummel; and, therefore, the Court need not consider it now. *See Ellis*, 2020 WL 6606327, at *3.

Furthermore, even considering the e-mail evidence, the Court agrees with Magistrate Judge Hummel's conclusion that Plaintiff's ADA and RA claims against Defendants King and Devlin-Varin must be dismissed. As Magistrate Judge Hummel indicated, Plaintiff's ADA and RA claims for monetary damages against Defendants Devlin-Varin and King in their individual capacities are legally inadequate because "under the ADA and RA, a state official may not be sued in their individual capacity." *See* Rep. Rec. at 9 (citing *Garcia v. S.U.N.Y. Health Scis. Ctr.*

*of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.")).

Likewise, even though it is unsettled in the Second Circuit whether an individual defendant can be sued in his/her official capacity to defend against ADA or RA claims, *see id.* at 9-10 (citations omitted), the Court agrees with Magistrate Judge Hummel that the ADA and RA claims against Defendants Devlin-Varin and King in their official capacities should be dismissed as redundant of the same claims against Defendant DOCCS. *See id.* at 10.

Accordingly, the Court overrules Plaintiff's objection in this regard.

### B.     Plaintiff's Medical Indifference Claim Against Defendant Rushford

Plaintiff contends that Defendants Devlin-Varin and Rushford were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because they failed to adhere to post-operative instructions. *See* Rep. Rec. at 17 (citing Compl.). "Defendants dispute that contention and argue that Plaintiff received adequate medical care in the infirmary and refused to attend his February 25, 2020, appointment with Retina Consultants, PLLC." *See id.* (citing Dkt. No. 36-27 at 19). "In support of summary judgment, [Defendant] Rushford, the Registered Nurse Supervisor 1 at Clinton C.F., provided a Declaration in which he aver[red] that he did not provide any direct health care to Plaintiff." *See id.* at 20 (citing Dkt. No. 36-26 at ¶ 9). "Plaintiff does not refute this claim and testified he had no personal contact with Rushford, *see* Dkt. No. 41 at 27, but alleges that e-mails between Rushford, Devlin-Varin, and Sheehan establish that Rushford was personally involved in Plaintiff's 'medical treatment plan and outside hospital trips that were planned for [him] to get [him] treated for both of -- my left eye and my

right eye.'" *See id.* (quoting [Dkt. No. 41] at 25). "Plaintiff asserts that Rushford failed to 'ensure' that 'the medical staff made the correct appointments for me and ensure[] that I was taken to those appointments by the Department of Corrections.'" *See id.* (quoting [Dkt. No. 41] at 27). However, as Magistrate Judge Hummel indicated, Plaintiff did not produce "the e-mails or any other evidence suggesting that Rushford was personally involved with Plaintiff's post-operative care in the infirmary in February 2020. Without such evidence, Plaintiff has not met his burden of presenting evidence to support his claim that Rushford acted with culpable intent with respect to Plaintiff's post-operative care." *See id.* (citations omitted).

In his Objections, Plaintiff contends that the Court should not dismiss his medical indifference claims against Defendant Rushford because "[Defendant] Rushford was personally involved with deciding whether Plaintiff qualified to receive medical verification concerning his known sensorial disabilities that left him unable to see/walk properly or navigate the facility safely." *See* Obj. at 1-2. In support of this position, Plaintiff cites to two (2) July 7, 2020 e-mails provided with the Objections that, Plaintiff contends, "show[] that on July 7, 2020, Rushford did not medically verify that Plaintiff had sensorial disability or was entitled to reasonable accommodation based upon being blind in right eye plus glaucoma diagnosis made in April 2020." *See* Obj. at 2. Apart from the fact that the July 7, 2020 e-mail correspondence does not appear to have been presented to Magistrate Judge Hummel - providing a reason to decline to consider it - this evidence does not support Plaintiff's position.

The July 7, 2020 e-mail correspondence begins with an email from Defendant King to several DOCCS officials, including Defendant Rushford. *See* Dkt. No. 44 at 3. Defendant King's email, with the subject "FW: Reasonable Accommodation-Sensorial Thompson 06A0191," indicates the following: "The inmate has filed a grievance and we require an update.

Did the inmate have surgery? Where does he stand?" *See id.* at 3. Defendant Rushford responded as follows:

> The inmate did have eye surgery and some follow-ups. He is refusing to have laser surgery done in follow-up to decrease his pressure. He most recently refused follow-up appt on 6/3/20. He has referral to see the eye doctor here but that has not been approved by the RMD[3] as it is not urgent as optometry clinics are just starting back up again on Thursday.[4] It may take up to 30 more days to have him seen for this because of COVID.

*See id.* at 3,

Even when viewed in the light most favorable to Plaintiff, Defendant Rushford's July 7, 2020 e-mail does not indicate that he was personally involved with deciding whether Plaintiff could attend post-operative medical procedures or appointments, or in determining whether Plaintiff was qualified to receive medical verification concerning his known sensorial disabilities. *See* Rep. Rec. at 16-17 (setting forth the personal involvement standard in the

---

[3] The Court presumes that RMD stands for Regional Medical Director. *Cf. Salvana v. New York State Dep't of Corr. & Cmty. Supervision*, 621 F. Supp. 3d 287, 294 (N.D.N.Y. 2022), *reconsideration denied,* No. 5:21-CV-735 (BKS/ML), 2022 WL 17083088 (N.D.N.Y. Nov. 18, 2022) (stating that "[a]t DOCCS, there are five Regional Medical Directors ("RMDs") and five Regional Superintendents for Health Services ("Superintendents") who 'oversee care in their designated areas' and report to the DOCCS Deputy Commissioner or Chief Medical Officer. Each DOCCS prison also has a Facility Health Services Director ('Facility Director'), who serves as the prison's highest medical authority. Facility Directors 'report directly' to Superintendents and indirectly to RMDs" (citation omitted)); *Williams v. Kepro*, No. 9:21-CV-302 (TJMCFH), 2023 WL 5806418, *2 (N.D.N.Y. Aug. 8, 2023), *report and recommendation adopted,* No. 9:21-CV-302 (TJMCFH), 2023 WL 5806328 (N.D.N.Y. Sept. 7, 2023) (explaining that "[i]n situations where the medical services were recommended for denial, the Kepro Medical Director would route the request to a New York State DOCCS Regional Medical Director [("RMD")] for review and final decision");*Wright v. Levitt*, No. 13-CV-563V, 2019 WL 2646425, *2 (W.D.N.Y. June 27, 2019), *report and recommendation adopted,* No. 13-CV-563, 2020 WL 897258 (W.D.N.Y. Feb. 25, 2020) (noting that "[t]he parties diverge as to what procedural steps occurred, or should have occurred, in response to the second denial from APS Healthcare for a consultation about cochlear implants. According to defendants, a denial from APS Healthcare for consultations or specialty care goes to the DOCCS Regional Medical Director ("RMD"). The RMD can decide that the consultation or the specialty care in question constitutes a medical necessity and can overturn any denial.")

[4] July 7, 2020 was a Wednesday.

Second Circuit). Rather, the e-mail plainly indicates that Plaintiff had refused follow-up laser surgery and a follow-up medical appointment and that Plaintiff's then-pending referral to see an eye doctor was awaiting approval by the Regional Medical Director (RMD). Although Plaintiff contends that he did not refuse post-operative procedures and appointments, *see* Rep. Rec. at 15, no reasonable factfinder could conclude from Defendant Rushford's July 7, 2020 e-mail that he played any direct role in post-operative determinations.

Furthermore, even assuming that Defendant Rushford played a direct role in post-operative determinations, the e-mail does not indicate that he acted with the requisite culpable intent with respect to Plaintiff's post-operative care. *See* Rep. Rec. at 17-20 (setting forth the operative Eighth Amendment denial-of-medical care standard). Again, the email indicates that Plaintiff himself rejected post-operative medical care and that the determination for then-pending medical appointments was in the hands of the Regional Medical Director.

Accordingly, the Court overrules Plaintiff's objection in this regard.

**C.      Plaintiff's Failure-to-Protect Claim Against Defendant Devlin-Varin**

As Magistrate Judge Hummel explained, "Plaintiff alleges that Sheehan 'ignored Plaintiff's medical providers['] orders,' and, as a result, he suffered 'pain after being handcuffed, leg shackled for more than six hours straight' during transports to [Albany Medical Center (AMC)], Retina Consultants, PLLC., and New Lion Eye Clinic. *See* Rep. Rec. at 23 (quoting Compl. at 10-11). "Plaintiff further claims that he reported to Devlin-Varin that he suffered injuries to his wrists and ankles from the restraints and that the officers who transported him 'would pick him up and toss him into [a] van that was not designed to accommodate inmates with sensorial disabilities causing him to fall onto seat or metal floor of van.'" *See id.* (quoting

Compl. at 11). "Defendants argue that Plaintiff has failed to establish that they failed to protect him from conditions posing a substantial risk of serious harm." *See id.* (citing Dkt. No. 36-27 at 24).

After reviewing the applicable standard for the failure-to-protect claims, *see* Rep. Rec. at 23-24; *see also id*. at 24 (stating that, "[i]n this case, Plaintiff must show that the alleged condition -- being transported in a 'regular van' while handcuffed and shackled -- was sufficiently serious to impose an unreasonable risk to plaintiff's health" (citations omitted)), Magistrate Judge Hummel concluded that

> Plaintiff has failed to raise a triable issue of fact with respect to his failure-to-protect claims. Initially, the undersigned notes that the record does not contain evidence to satisfy the objective prong of this Eighth Amendment claim. In the complaint, Plaintiff makes general claims regarding "transports" to AMC, Retina Consultants and New Lion Eye Clinic. However, Plaintiff does not specify which transports, if any, involved conditions posing a substantial risk of serious harm. The record lacks dates, times, locations, or the identity of any officers or individuals involved in the transports. Moreover, Plaintiff's vague claims related to "swollen and numb" wrists and ankles from restraints that were "so tight," are not supported by evidence related to when, where, or how Plaintiff sustained the alleged injuries. As presently constituted, there is no record evidence to support Plaintiff's contention that he sustained any injuries during any transport.
>
> Even assuming Plaintiff was subjected to temporary or unnecessary discomfort associated with transport, "without medical evidence demonstrating that this caused [. . .] further injury," the Court cannot conclude that Defendants' inaction or action resulted in a constitutional violation. *See, e.g., Burgess v. Pliler*, No. CIVS030643, 2007 WL 430742, at *10 (E.D. Cal. Feb. 6, 2007) (holding that the defendant's inaction amounted, at most, to negligence which does not constitute an Eighth Amendment violation) (citation omitted), *report and recommendation adopted*, 2007 WL 776585 (E.D. Cal. Mar. 12, 2007), *aff'd sub nom Burgess v. Johnson*, 314 F. App'x 33 (9th Cir. 2008) (summary order); *see also generally Shain v. Grayson Cnty., Ky.*, 4:11-CV-P84-M, 2011 WL 5122667, at *4-5 (W.D. KY Oct. 28, 2011) (finding that, where the inmate plaintiff[] alleged "only that his hands were red and swollen from the handcuffs and black box restraint and that he suffered discomfort" during transport, and did not contend that he sought or received medical attention during or following the transport, his complaints of injury were de minimis and did not rise to the level of an Eighth Amendment violation).
>
> Second, the record lacks facts to satisfy the subjective element of this Eighth

> Amendment claim. In support of summary judgment, Sheehan provided a Declaration and conceded that she was involved in decisions related to Plaintiff's transportation from AMC in August 2020. Dkt. No. 36-23 at ¶¶ 5, 8, 10. Sheehan assessed Plaintiff's condition and concluded that a "regular van" could be utilized to transport him from AMC to Elmira C.F. *Id.* at ¶ 12. Plaintiff testified that he had no personal interaction with Sheehan. Dkt. No. 41 at 31. Consequently, without more, the record lacks evidence suggesting that Sheehan exhibited any deliberate indifference. *See Jones v. Lott*, No. CV 17-0513, 2018 WL 1998333, at *3 (S.D. Ala. Apr. 5, 2018) (holding that the defendant, who took action to "get [the] [p]laintiff to where there was an infirmary, so he could be treated[,]" cannot be said to have exhibited deliberate indifference), *report and recommendation adopted*, 2018 WL 1997759 (S.D. Ala. Apr. 27, 2018).
>
> Similarly, with respect to Devlin-Varin, the record lacks evidence connecting Devlin-Varin to any decisions related to how or when Plaintiff was transported to/from medical appointments. To the extent that Plaintiff alleges that Devlin-Varin [was] aware that he sustained injuries during transport, those claims are wholly conclusory. The record lacks any evidence [to] establish when or how Plaintiff "notified" Devlin-Varin that he was injured.
>
> As the record lacks evidence demonstrating that Plaintiff was exposed to conditions posing an unreasonable risk of harm, or that Defendants were personally involved or even aware of the conditions, it cannot be said that Defendants acted with deliberate indifference. Accordingly, it is recommended that Defendants' motion be granted on this ground.

*See* Rep. Rec. at 24-26.

Plaintiff objects to these conclusions, but only as they relate to Defendant Devlin-Varin. *See* Obj. at 2-3. In support of this objection, Plaintiff provides a May 21, 2020 e-mail from Defendant Devlin-Varin sent in response to an e-mail from non-party Barbara Hough, RN. *See* Dkt. No. 44 at 4. Nurse Hough's email, sent to several DOCCS officials including Defendant Devlin-Varin, advised that Plaintiff had medical appointments scheduled on June 1 and 3, 2020 in the Albany, New York area, and asked, "Consider staying at Coxsackie???" *See id.* Defendant Devlin-Varin responded that

> [i]f he could stay overnight at Coxsackie, that probably would be best. He does not do well with turn around trips (I can't blame him, he would spend the better part of two days in shackles). He has severe issues with his eyes as well as Stage IV

>  [chronic kidney disease (CKD)].  I'm not sure how to make that happen, though, if Bonnie and Wendy[5] would let me know what to do.  Thanks.

*See id.*

Plaintiff contends that Defendant Devlin-Varin's May 21, 2020 e-mail establishes that she "was involved with decisions related to how or when Plaintiff was transported to/from medical appointments" because it "shows that Devlin-Varin sought to have Plaintiff's stay overnight in Coxsackie correctional facility so plaintiff could make medical appointments."  *See* Obj. at 2.  The Court finds that this argument is without merit.

Defendant Devlin-Varin's e-mail indicates only that she was cognizant that two trips from Clinton CF to the Albany area would require Plaintiff to spend the better part of two days in shackles and that Plaintiff does not "do well with turnaround trips" for this reason. *See* Dkt. No. 44 at 4.  Defendant Devlin-Varin postulated that it would probably "be best" if Plaintiff could spend the overnight at Coxsackie C.F. and asked how this could be accomplished.  *See id.*  This statement, on its face, does not indicate that Defendant Devlin-Varin was involved "with decisions related to how or when Plaintiff was transported to/from medical appointments," but only that she questioned whether there was some way to avoid multiple trips.

Furthermore, the e-mail does not indicate that Defendant Devlin-Varin was aware that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm" arising from the long commutes such that it would satisfy the objective or subjective prongs of the failure-to-protect claims against her.  *See* Rep. Rec. at 23-24 ("As to the objective prong, the deprivation must be sufficiently serious, and contemplate a condition of urgency, one that may

---

[5]The Court presumes that this is a reference to Bonnie Bruno and Wendy King, both of whom are referenced in the address section of Defendant Devlin-Verin's e-mail.  Dkt. No. 44, at 4.

produce death, degeneration, or extreme pain. As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The plaintiff must show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." (cleaned up)). The e-mail indicates only that the long commutes would require Plaintiff to spend the "better part of two days in shackles," but it does not indicate that Defendant Devlin-Varin was aware of facts from which to conclude that these commutes would cause Plaintiff to suffer a substantial risk of serious harm.

Plaintiff argues that the "reason why there is no record of Plaintiff's reporting to Devlin-Varin that he was injured during transport to [a] medical appointment" is because "Devlin-Varin did not report this incident." *See* Obj. at 2. This is an attempt to engage the Court in a rehashing of the arguments presented to Magistrate Judge Hummel and does not identify a specific alleged error in the Report-Recommendation. Subjecting Magistrate Judge Hummel's conclusions relative to the failure-to-protect claim against Defendant Devlin-Varin to clear error review, the Court finds none.

Further, even when conducting *de novo* review, this argument fails to establish a basis to conclude that Defendant Devlin-Varin was personally involved in decisions about how or when Plaintiff would be transported to and from his medical appointments. Indeed, even assuming that Plaintiff reported to Defendant Devlin-Varin that he was injured during a medical transport, that fact does not indicate that Defendant Devlin-Varin was personally involved in decisions as to when and how Plaintiff was to be transported to his medical appointments. Absent this personal

involvement, Plaintiff may not maintain his Eighth Amendment failure-to-protect claim against Defendant Devlin-Varin.

To the extent Plaintiff is arguing that Defendant Devlin-Varin was aware that he would suffer significant injury during transportation from Clinton C.F. to his medical appointments because he complained about such transportation, the argument is insufficient to withstand Defendant Devlin-Varin's motion for summary judgment. "'[W]hen the moving party has carried its burden[,] ... its opponent must do more than simply show that there is some metaphysical doubt as to the material facts,'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quotation omitted), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). Plaintiff does not present evidence as to when the purported complaint was made, what was stated, and whether he presented any medical evidence indicating the nature and extent of the injuries he purportedly sustained by wearing shackles during the previous transport. "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quotation omitted), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citation omitted); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (noting that "'a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment'" (quotation omitted)); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (explaining that "[w]hile we are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party]', . . . 'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment'"

(quotation omitted)); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (stating that a party opposing a properly supported motion for summary judgment may not rest upon conclusory allegations or unsubstantiated speculation). Plaintiff fails to present anything more than conclusory and speculative allegations about Devlin-Varin's knowledge of the purported excessive risk of harm that could be caused by two (2) trips for medical appointments, which is insufficient to withstand summary judgment. Defendant Devlin-Varin's May 21, 2020 e-mail does not change this conclusion.

Finally, Plaintiff argues that the correction officers who transported him to the subject medical appointment were not wearing name tags or body cameras. These facts alone, even if true, do not establish that Defendant Devlin-Varin was personally involved` in the decision as to when and how Plaintiff would be transported to his medical appointments. Likewise, this evidence does not establish that Defendant Devlin-Varin was aware that Plaintiff could suffer significant injury by the transportation.

Accordingly, the Court overrules Plaintiff's objection in this regard.

### D.  Recommendations without Objections

The Court has reviewed for clear error Magistrate Judge Hummel's recommendations to which there are no objections and finds none.

### IV. CONCLUSION

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Hummel's Report-Recommendation and Order, *see*(Dkt. No. 42, for the reasons stated therein. Therefore, the Court hereby

**ORDERS** that that Plaintiff's motion for partial summary judgment, *see* Dkt. No. 32, is **DENIED IN ITS ENTIRETY**; and the Court further

**ORDERS** that Defendants' cross-motion for summary judgment, *see* Dkt. No. 36, is **GRANTED in part and DENIED in part.** The cross-motion is granted insofar as (1) Plaintiff's ADA and RA claims against Defendants King and Devlin-Varin, (2) Plaintiff's Eighth Amendment claims against Defendant Rushford, and (3) Plaintiff's Eighth Amendment failure-to-protect claims are **DISMISSED**, and the cross-motion is denied in all other respects; and the Court further

**ORDERS** that the Doe defendant is *sua sponte* **DISMISSED** from this action without prejudice due to Plaintiff's failure to identify and/or serve the defendant; and the Court further

**ORDERS** that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules of Practice.[6]

**IT IS SO ORDERED.**

Dated: February 13, 2024
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[6] As a result of this Memorandum-Decision and Order, Plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Devlin-Varin and his claims under the ADA and RA against Defendant DOCCS remain for trial.